**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DONNA REED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 12 C 7600** |
| **v.** | ) | |
| | ) | **Magistrate Judge** |
| **CAROLYN W. COLVIN,** | ) | **Maria Valdez** |
| **acting commissioner of Social** | ) | |
| **Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donna Reed ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her claim for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court grants the Commissioner's Motion for Summary Judgment, [Doc. No. 32], and denies Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security, [Doc. No. 19].

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I.    PROCEDURAL AND FACTUAL HISTORY[2]

Plaintiff is obese and has suffered from severe asthma attacks for most of her life. Unfortunately, in 2008, her asthma worsened to the point of requiring several emergency room visits and frustrated her ability to maintain employment. Plaintiff thus filed a Title II application for SSDI benefits and a Title XVI application for SSI benefits, alleging a disability onset date of November 1, 2008. Her application was denied initially and upon reconsideration. Accordingly, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), who found that Plaintiff was not disabled at Step Five of the Social Security Administration's sequential analysis.

At the hearing, the ALJ found that Plaintiff suffered from the following severe impairments: obesity and asthma. After determining that Plaintiff did not meet any listed impairment, the ALJ then calculated Plaintiff's Residual Functional Capacity ("RFC") and found that she could perform sedentary work with the following exceptions: she should only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; she should never climb ladders, ropes, or scaffolds; she must avoid concentrated exposure to temperature extremes, humidity, and pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation; and she must avoid even moderate exposure to hazardous machinery and unprotected heights.

---

[2] The following facts from the parties' submissions are undisputed unless otherwise noted.

The ALJ then consulted with a Vocational Expert ("VE") to determine if Plaintiff could perform her past relevant work or any jobs in the national economy. On the basis of her RFC assessment and the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work, but that she could perform other jobs that existed in significant numbers in the national economy. Thus, ALJ found that Plaintiff was not disabled under the Social Security Act.

## STANDARD OF REVIEW

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ conducts a five-step analysis and considers the following in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a

finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.*
Once the claimant shows an inability to perform past work, the burden then shifts
to the Commissioner to show the claimant's ability to engage in other work existing
in significant numbers in the national economy. *Id.*

## II.  JUDICIAL REVIEW

Judicial review of the ALJ's decision is limited to determining whether the
ALJ's findings are supported by substantial evidence or based upon legal error.
*Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d
1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion." *Richardson v.
Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.
2007). Under this standard, the ALJ is not required to address "every piece of
evidence or testimony in the record, [but] the ALJ's analysis must provide some
glimpse into the reasoning behind her decision to deny benefits." *Zurawski v.
Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Rather, the ALJ must simply "build an
accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d
at 872, and minimally articulate the "analysis of the evidence with enough detail
and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v.
Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

In reviewing an ALJ's decision, a court may not substitute its judgment for
that of the Commissioner by reevaluating facts, reweighing evidence, resolving
conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

Thus, where conflicting evidence would allow reasonable minds to differ, the court must defer to the decision of the Commissioner. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## DISCUSSION

On appeal, Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor based upon proper legal standards, asserting: (1) the ALJ's Step Three determination was flawed; (2) the ALJ ignored evidence supporting further restrictions in Plaintiff's RFC; and (3) the ALJ improperly determined that Plaintiff's alleged sensitivity to pulmonary irritants was not fully credibly. The Court will address each issue in turn.

## I.     The ALJ's Step Three Analysis

*(a) Listing 3.03(B)*

Plaintiff first claims the ALJ erred by determining that she did not meet Listing 3.03B, which provides that an individual who experiences asthma attacks "in spite of prescribed treatment and requiring physician interventions, occurring at least once every 2 months or at least six times a year" must be considered disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.03B. In his opinion, the ALJ offered two independent reasons for finding that Plaintiff did not meet the listing: (1) although Plaintiff visited the emergency room six times between September 2009 and June 2010 for her asthma, the visits lasted less than twenty-four hours and did not result in inpatient admission; and (2) Plaintiff was not following a "prescribed course of treatment," in that she admittedly was not taking her medications or using an

inhaler as prescribed by the ER doctors. Plaintiff now challenges the ALJ's conclusion in both respects, claiming that the ALJ's consideration of the length of the ER visits is unsupported by the language of the listing, and that the ALJ should have followed *SSR 82-59* and considered whether Plaintiff's inability to afford insurance constituted justifiable cause for not complying with her prescribed treatment. Neither argument succeeds.

Primarily, Plaintiff's position is undercut by the plain language of the listing. Simply put, there are three criteria that must be analyzed to determine whether a claimant is presumptively disabled by her asthma: (1) the frequency of the episodes; (2) the intensity of the episodes; and (3) whether the episodes occur despite prescribed treatment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.03B. With respect to the third element, the regulations plainly state that "the medical evidence must . . . include information documenting adherence to a prescribed regiment of treatment." *Id.* Thus, adhering to a "prescribed treatment" and having asthma attacks "in spite of" that treatment are necessary conditions to satisfying the listing.[3] *See Walunga v. Colvin*, Case 13 CV 0759, 2014 WL 2931927, at *8 (N.D. Ill. June 23, 2014) (interpreting Listing 3.03(B) as requiring a claimant to follow a prescribed treatment plan). There is no language regarding a claimant's justifiable cause for failing to have a prescribed course of treatment, nor is there any

---

[3] This interpretation is further supported by the language of Listing 3.00C, which is cross-referenced by Listing 3.03(B). Section 3.00C states that "[w]hen a respiratory impairment is episodic in nature, as can occur with exacerbations of asthma . . . the frequency and intensity of episodes that occur despite prescribed treatment are the major criteria for determining the level of impairment. 20 C.F.R. 404, Subpt. P, App. 1 3.00C. Again, no mention is made of a claimant's justifiable failure to follow treatment.

indication that ALJs should engage in such an analysis. Therefore, as Plaintiff admittedly did not comply with her prescribed treatment, it follows that her asthma attacks did not occur "in spite of" that treatment, which necessarily disqualifies her under Listing 3.03B.

Plaintiff's reliance on SSR 82-59 does not save her argument. The language of the ruling makes clear that a "justifiable cause" analysis applies only where an ALJ denies disability benefits to an otherwise-disabled claimant in virtue of her failure to follow treatment. *See SSR 82-59*. Here, the ALJ did not find Plaintiff disabled and then deny her benefits because she did not follow her treatment plan. Rather, the ALJ determined that Plaintiff did not satisfy the clear requirements of Listing 3.03(B) (which is not a finding of disability) and proceeded with the typical sequential analysis. Ultimately, Plaintiff has cited no authority suggesting that SSR 82-59 governs the analysis of Listing 3.03(B),[4] and the Court therefore finds no error in the ALJ's listing analysis.[5]

---

[4] Plaintiff relies on *Shauger v. Astrue, 675 F.3d 690, 696* (7th Cir. 2010) for the principle that "even in cases where the strict protocol of Social Security Ruling 82-59 is not at issue, the Seventh Circuit . . . has mandated 'an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.'" (Pl.'s Rep. Br. at 5.) But *Shauger* concerned *SSR 96-7p* and credibility determinations, not *SSR82-59* and listings. *See id.*

[5] By extension, any error that the ALJ made in analyzing the duration of Plaintiff's ER visits was harmless: on remand, Plaintiff still would not satisfy the "in spite of prescribed treatment" requirement.

*(b) Listing equivalence*

Plaintiff next challenges the ALJ's determination that the combination of her asthma and obesity did not equal a listing. The entirely of the ALJ's findings in this regard is as follows:

> There are no Listing criteria . . . specific to the evaluation of obesity impairments. However, SSR 02-1p requires consideration of obesity. . . . These considerations have been taken into account in reaching the conclusions herein at the 2nd through 4th steps of the sequential disability evaluation process, even though no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant' [sic] obesity.
>
> This assessment has considered the effects of obesity with a height of 5'2" and weight of 297 pounds. (SSR 02-1p) Overall, the evidence does not reflect that the obesity when considering its impact on the relevant body systems individually or in combinations results in a listing being met or medically equaled.

(R. 25.) On appeal, Plaintiff claims this analysis is insufficient for judicial review because it does not specify which listing was considered or the medical opinions relied upon. The Court disagrees.

True, the ALJ could have better articulated his reasoning. *See Ribuado v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2011) (explaining that in analyzing listing equivalence, ALJs should clearly state which listing they are considering and provide more than a perfunctory analysis). But a common-sense reading of the ALJ's opinion resolves any ambiguity. In terms of specificity, it is fairly obvious that the ALJ considered Listing 3.03B given that the equivalency analysis directly follows the Listing 3.03B analysis. Moreover, the consideration of Plaintiff's obesity on her "relevant body systems," (R. 25), further supports this reading of the opinion:

Plaintiff's only alleged impairments were asthma and obesity, and therefore the only "relevant body system" to consider along with her obesity was the pulmonary system (particularly her asthma), which entails a Listing 3.03B analysis.

Similarly, with respect to the evidence relied upon, the ALJ explained that no medical source attributed additional or cumulative limitations to Plaintiff's obesity. What more is there to say? There was no evidence before the ALJ indicating Plaintiff's obesity affected her asthma, and therefore no further analysis was required. Although Plaintiff claims it is unclear from the ALJ's two-paragraph analysis whether he appreciated the particularities of Plaintiff's impairments and the relevant medical evidence, the record supports no such conclusion. The ALJ provided a discussion of Plaintiff's severe and non-severe impairments, the objective medical evidence,[6] and her credibility when he determined her RFC. (*See* R. 28-30.) That discussion provides the necessary detail to review the ALJ's Step Three analysis in a meaningful way. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses at

---

[6] Plaintiff also challenges the completeness of the evidence on which the ALJ relied. Specifically, Plaintiff claims that the DDS physician who reviewed Plaintiff's records (and whose opinion the ALJ relied upon) did so before four ER visits were entered into the record. Thus, on Plaintiff's account, because the "cornerstone of Listing 3.03B is that an individual who suffers a frequency and intensity of asthma attacks requiring six physician interventions in a year cannot sustain work," (Pl.'s Rep. Br. at 8), and Plaintiff visited the ER twice before the DDS evaluation, it follows that the four additional ER visits would qualify her as disabled under Listing 3.03B. This argument suffers from two fatal flaws. First, in terms of equivalency, the ER records do not, in any way, demonstrate that Plaintiff's obesity affects her asthma. (*See* R. 317-97.) Second, and more fundamentally, even if they did, Plaintiff would still be unable to satisfy the "in spite of prescribed treatment" requirement of Listing 3.03B, as discussed above.

both steps three and five"); *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985) ("[W]e examine the [ALJ]'s opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions."). Here, the ALJ's discussion at Step Three, when considered in light of his RFC assessment, indeed satisfied his "duty to articulate." *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (explaining that an ALJ need not complete a written evaluation of every piece of evidence). Accordingly, the Court finds no reason to overturn the ALJ's Step Three determination.

## II.    The ALJ's Step Four Analysis

### (a) Evidence of Plaintiff's Pulmonary Limitations

Regarding her RFC, Plaintiff disputes the ALJ's finding that she should avoid only concentrated exposure to pulmonary irritants rather than moderate exposure. To support this contention, Plaintiff relies on two pieces of evidence, which the ALJ allegedly ignored: (1) the VE's testimony (in response to cross examination by Plaintiff's counsel) that no jobs would be available if Plaintiff needed to avoid moderate exposure to pulmonary irritants, such as perfume; and (2) the apparent inconsistency between the Consultative Examiner's ("CE") written statement that "[d]ue to asthma exposure to pulmonary irritants should be avoided," (R. 313), and the CE's finding that Plaintiff should avoid only concentrated exposure to pulmonary irritants. Neither piece of "evidence," however, changes the outcome of this case.

10

Above all, Plaintiff's reliance on the VE's testimony is misguided because that testimony, by itself, is simply not probative of Plaintiff's functional capacity. The cases Plaintiff cites to the contrary are either distinguishable or unpersuasive: they pertain to instances where the ALJ ignored VE testimony about the vocational impact of certain impairments whose existence was plausibly supported by evidence in the record.[7] Here, in contrast, the ALJ did not find, and Plaintiff has not provided, any medical evidence suggesting that she should avoid moderate exposure to pulmonary irritants. Instead, Plaintiff's counsel merely asked the VE a hypothetical question: *if* Plaintiff needs to avoid moderate exposure to pulmonary irritants (e.g., perfume), *then* what effect would that have on her ability to find a job? The VE responded that such sensitivity to pulmonary irritants would eliminate any available jobs, but neither that answer nor the question itself establishes that Plaintiff was, in fact, so sensitive.[8] Therefore, the ALJ's "failure" to address this aspect of the VE's testimony was not error, much less reversible error.

Plaintiff's second contention — the alleged inconsistency in the CE's RFC questionnaire — is easily dismissed. On line seven of the form, the CE checked a box indicating that Plaintiff should avoid concentrated exposure to fumes, odors, dust, etc. On line nine, which asks "how and why the evidence supports your conclusion," (R. 341), the CE wrote "due to asthma pulmonary exposure to irritants should be avoided." (*Id.*) Plaintiff would have the Court believe that this statement

---

[7] *See, e.g., Bailey v. Barnhart*, 473 F. Supp. 2d 822, 840 (N.D. Ill. 2006); *Sayles v. Barnhart*, No. 00 C 7200, 2001 U.S. Dist. LEXIS 20398, at *27 (N.D. Ill. Dec. 7, 2001).

[8] Although Plaintiff's testimony at the hearing might support such an inference, the ALJ properly discredited her testimony, as will be discussed *infra*.

somehow means Plaintiff should avoid all exposure to pulmonary irritants. But the CE's line-9 response is plainly an explication of her conclusion on line seven, not a broadening of that conclusion. Thus, while Plaintiff correctly notes that ALJs are required to resolve material conflicts in the evidence, *See Henke v. Astrue*, 498 F. App'x 636, 641 (7th Cir. 2012), the Court finds that no such conflict exists.

*(b) The ALJ's Credibility Determination*

In terms of credibility, Plaintiff asserts that the ALJ improperly discounted her testimony that she is hypersensitive to virtually all pulmonary irritants, such as perfume. The ALJ discredited her testimony because (1) there was no medical evidence that supported her allegations of extreme sensitivity, (2) she did not diligently pursue available treatment, and (3) her daily activities regularly exposed her to pulmonary irritants. Plaintiff challenges each of these reasons,[9] but none of her arguments demonstrate that the ALJ's credibility finding was patently wrong. *See Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) (explaining that in order to overturn an ALJ's credibility determination, a claimant must show that it is patently wrong and lacking any support in the record).

First, Plaintiff argues that the ALJ erred by relying solely on the absence of medical evidence to discount her alleged limitations. This argument, however, is belied by the record, and even Plaintiff's briefs, where she clearly discusses the other aspects of the ALJ's credibility finding (namely, her treatment history, daily

---

[9] Plaintiff also challenges the ALJ's use of "boilerplate language," which has been criticized by the Seventh Circuit. But this argument lacks sufficient merit to warrant lengthy discussion. The ALJ's credibility finding is replete with evidence-specific discussion. Plaintiff's argument is thus nothing more than "cherry picking" certain phrases in the ALJ's opinion.

activities, and admitted exposure to pulmonary irritants). Moreover, *SSR 96-7p* plainly states that ALJs may discredit a claimant's testimony on the basis of a lack of evidence. *See SSR 96-7p*. Of course, as Plaintiff correctly notes, ALJs may not *completely* discredit a claimant's symptoms based solely on a lack of evidence, *see Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009), but that is not what the ALJ did here. Therefore, Plaintiff's argument fails.

Next, Plaintiff claims the ALJ improperly drew a negative inference regarding her failure to obtain medication even though she was uninsured. Contrary to Plaintiff's assertions, however, the ALJ indeed considered her financial difficulties but rejected her claim that she could not afford medication for three reasons: (1) in 2008, she was given a list of pharmacies and drug manufacturers who could provide her medication at little or no cost, but she failed to follow through with them; (2) treatment notes from 2009-2010 reflect that she was able to obtain medication; and (3) she had access to an asthma clinic but did not regularly seek treatment. These reasons, when considered with the ALJ's broader credibility analysis, sufficiently justify the ALJ's finding.[10]

Lastly, Plaintiff argues that the ALJ "played doctor" by analogizing her daily activities, which exposed her to cleaning products and cigarette smoke, to a broader tolerance for pulmonary irritants. This argument is unavailing. Given the lack of medical evidence on Plaintiff's asthma triggers, and that she admittedly tolerated

---

[10] The Court is mindful that the ALJ could have done more to investigate the extent of Plaintiff's financial difficulties, and if this were the only basis on which the ALJ discredited her testimony, then perhaps a remand would be required. But the ALJ's other reasons for discrediting Plaintiff independently support his conclusion, and therefore any error in assessing Plaintiff's financial difficulty was harmless.

smoking, living with a smoker, and using household cleaning products, it was entirely reasonable for the ALJ to disbelieve her claims of extreme sensitivity to pulmonary irritants. Worse still, Plaintiff testified that she did not smoke, whereas the ALJ found hospital records indicating the opposite. The ALJ's skepticism of Plaintiff's testimony was thus entirely warranted, and the Court will therefore not disturb that finding.

Ultimately, Plaintiff has neither provided any evidence contrary to the ALJ's findings nor demonstrated any legal error in that regard. As such, the Court affirms the ALJ's decision in its entirety.

## **CONCLUSION**

For the reasons set forth above, the Court grants the Commissioner's Motion for Summary Judgment, [Doc. No. 32], and denies Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security, [Doc. No. 19].

**SO ORDERED.**                          **ENTERED:**

DATE:  **February 23, 2015**          _____
                                        **HON. MARIA VALDEZ**
                                        **United States Magistrate Judge**

14